Good morning. May it please the court. Police brutality has become a topic of ever-increasing conversation in today's society. These instances of questionable police conduct undermine the legitimacy of our criminal system, not because they are discussed, but because our justice system works on the belief of the population that it is inherently fair. Our Constitution protects against the abuses of known history, from arbitrary arrests to excessive punishments, to remedies for wrongs that have been committed by those in power. This case speaks to each of those issues. The overarching question for this court to determine is, have we created such artificial barriers to petitioning the courts? Have the barriers been created so high that abuses of power remain unchecked, undermining the very credibility of the system? We believe this case underscores the necessity of a strong judiciary taking action to right the wrongs of those exercising police authority over the population. In this instance, the police officers and the jails for whom they worked violated our client's civil rights by entering his home and arresting him without probable cause, beating him repeatedly by the hand, causing him over $367,000 in medical bills, and failing to get him appropriate medical care once the beatings had taken their toll on him. At one point, the plaintiff was handcuffed to a wall when the officers shoved him to the ground and slammed the jail door on his shoulder, breaking it. They have claimed justification. You're describing now something like a claim of an individual plaintiff against an individual defendant in a similar instance. So how did we end up with a case that's about custom policy and official defendants? Serendipitously, Your Honor, by accident. Well, I thought you filed a complaint. We did. Well, I came in at the summary judgment phase, but yes, Mr. Klopfenstein filed the complaint, and the complaint was filed in Missouri under Missouri law with a 1983 claim that was subsequently removed. After the removal, Mr. Klopfenstein did not amend the complaint because the complaint was fully adequate and named all of the defendants in both their individual and their official capacity pursuant to Missouri law, and then it was removed to in a specific sentence saying, we hereby sue these individuals in their individual capacity. However, the complaint itself establishes clearly and unequivocally that the individuals were sued individually as well as the organizations for training and failure to train and for pattern and practice. So the defendants didn't even raise that in their motion to dismiss. Instead, the court, sua sponte, dismissed the individual claims based on the Baker case saying that there wasn't a specific sentence that said, we are suing these individuals. However, if you look at the Baker case, you'll see that the Baker case relies on the Augusta case, Rawlings v. Augusta. And in the Augusta case, what the court did, that's where Judge Cailloux plead individual authority. However, the Augusta case then looked through the petition and looking through the petition found that because of the way it had been pleaded, it was clear from the face of the petition that the individuals had sued in their individual capacity. If you look at the face of the petition that Mr. Klopfenstein filed on behalf of Kerry Mick, you will see that in that petition as well, it was clearly against the individuals in their individual capacity as well as the individuals in their official capacity. I wanted to slow down and help us with where we should look in the complaint. You're referring to the petition? Yes, the first amended complaint. I have one that's called first amended cause of action. Yes, that would be correct. And if you look in the first amended causes of actions, first, if you looked in the allegations common to all counts, you will see in paragraphs 43, 45 and 47 that he is specifically talking about the acts of the individuals. Then if you look at 49 and 50, he's delineating different acts against the organizations. So from that you can see, first of all, that he is delineating acts against the individuals separate from the acts of the organization. Then if you look at each of the counts, 43, 45 and 47 deal with the individuals, 49 and 50 deal with the organizations. Then if you look at the causes of action themselves, under each cause of action it will say each of the defendants individually said. And so when you're looking in the counts themselves, the counts specifically say the individuals. Then using the Augusta case as some reference, in the Augusta case they said clearly they were not suing in their official capacities only because a certain cause of action that they had filed would not then be held against the organization. In each of the counts we have asked for punitive damages. You cannot get punitive damages against the county. So that establishes then that the plaintiffs were suing against the organization, not merely in their official capacities. So using the Augusta case and the manner in which the Augusta case looked at the petition as a whole, we have the exact same kinds of allegations in the petition that Mr. Klopfenstein filed in this manner as well. So this is the only circuit that requires a plaintiff to put in a specific sentence concerning official capacity versus individual capacity. Every other circuit in the United States looks at the course of proceedings between the parties to determine whether or not the capacity in which they're being sued is official or if it's individual. The Supreme Court has recognized that that type of analysis is appropriate. Therefore the Eighth Circuit is the outlier on exactly how you have to plead whether you're suing individually or if you're suing in official capacity. We believe that especially since this was a removal action where it was removed from state court and under the state court provisions we were clearly within the provisions that allow the courts to determine that it was both individual capacity and official capacity, that then it's a substantial gotcha to be removed from... Well, I do believe it's a gotcha because when you... Well, first the additional briefing, yeah, the additional briefing, the request for additional briefing had to do with the summary judgment motion that came later. The motion to dismiss... The motion to dismiss wasn't ruled on immediately upon the filing of the case. However, there was no argument by the defendants in the motion to dismiss stage that this was official capacity only. So there wasn't the opportunity for the plaintiff to even argue, oh, wait a minute, hey, no, we intended to sue them both individually and in their official capacities because it was sua sponte, just dismissed by the court. So there wasn't the opportunity to argue that or have it brought to their attention that something that had been completely appropriate under state law. So it would be unfair to say this is poor lawyering because Mr. Klopfenstein fully complied with the jurisdiction in which he filed the case. Was he not familiar with federal practice or the Eighth Circuit law in the area? Well, Your Honor, there's a lot of Eighth Circuit law. And so could this have slipped by him that he's supposed to look at a particular case, the Baker v. Chisholm case, to determine whether or not his pleading was appropriate? There's a lot of Eighth Circuit law to look at. And so it is possible that he missed that particular case. But then none of us know all of the case law that has been issued by the Eighth Circuit over the course of the generation. But in the district court, in rebuttance of this, his plaintiff concedes this point. He does not speak that he has not sued the nine defendants individually. And he characterizes his claims as, quote, official capacity claims, unquote. That's what the district court said that the plaintiff conceded. Well, I don't believe that there was any argumentation with regard to that in any of the briefing. If there was, I missed it. But based upon my reading of it, I do not see that there was anything in any briefing, in any argumentation before the court that indicated that he was conceding that there was a, this was in individual capacity or official capacity only. Now, I do believe that there was a discussion between counsel with regard to who was he to collect against. And clearly, the police officers wouldn't be a deep pocket for purposes of collection. But that's a completely different issue than whether they are being sued in their individual or their official capacities. Well, I do think there are two key issues. I think the first is this, whether or not they were sued in their individual capacities. But I do think the second issue is whether or not the proof that was adduced in the summary judgment motion was sufficient to avoid summary judgment with regard to the pattern and practice claims and the failure to train claims against DeKalb County and against Clinton County. The evidence adduced by the plaintiff was that he had been horribly beaten on three occasions during the course of one night at Clinton County Jail. And three other inmates indicated that not only had they been similarly beaten without cause, but they had also seen other inmates beaten. And one of them, Thompson, indicated that he was there, heard, and saw the beating that our client took. And so we believe that this establishes, because of the timeframe that we're talking about, that this was a widespread continuing problem at the Clinton County Jail that is documented by three separate individuals in affidavits. Now, the affidavit that we produced, the argument from the lower court was we didn't have sufficient information in the affidavit and that the claims that these individuals made were unsubstantiated. Well, they clearly substantiate the claims of our client. And with regard to the idea that these claims are unsubstantiated, in order to have a substantiated claim, someone has to investigate. And the failure of Clinton County to investigate the lawsuits and in appeals, these individuals clearly established that there is a pattern of practice at the Clinton County Jail of taking individuals into the drunk tank and beating them there. As a matter of fact, even the videotape from the drunk tank, there is a video from the drunk tank that was appended to the summary judgment, but the police officers from some time prior had pointed the videotape to the ceiling. So the only thing you could see was the rifle. You could hear the cries for help. You could hear the screams. But you cannot see any portion of the beating. That establishes that there was an intent on the part of these officers to beat prisoners who come into the drunk tank. It also establishes that there is notice or actual or constructive to the individuals who are supervisory that they should take note that these individuals, these cops, are engaging in behavior that is unconstitutional directed toward these inmates. Then if you move to DeKalb County, DeKalb County actually is a little bit different in that DeKalb County has a specific policy that says if an inmate asks for medical attention, it shall be given to them. It takes away all discretion with regard to when, how, and under what circumstances you must call for medical attention at the time that he requested it. Even beginning in the Clinton County Jail, the other inmates, and he had testified, he was screaming. He was begging for help. He was begging them to stop, and they wouldn't. And he begged for medical attention. When he was in the ambulance, he begged for medical attention, and still they didn't do it. And at that point in time, DeKalb County officers were in the ambulance with him. At the moment that he said, I want medical care, the DeKalb County officers were in the ambulance with him. They required them at that moment to get him medical attention. They didn't do that. That is a ministerial act. That is not a discretionary act or a governmental function at that point because the policy circumscribes the manner in which DeKalb County can request medical attention. When he got to the DeKalb County Jail, he continued to moan in pain. He Yes. And we're required to do two things. If there is a, we're claiming this is a ministerial act, and they failed in a ministerial act. But if you move to the constitutional violation establishing a pattern in practice, we can establish that by the affidavits of the other inmates, which establish that whenever someone would ask for any kind of medical attention, instead of providing it, they would be maced. And what is it in those affidavits, courts show some evidence of supervisory or policymaker knowledge of these unspoken policies? The, according to the Atkinson case. There is evidence of some abuses. Yes. But what is it that puts policymakers and supervisors on notice? Two things. The first is there was reports made the following day, so they were on notice subsequent to. But more importantly, this was such a widespread, longstanding abuse that under the Atkinson case, we believe that that fulfills the constructive notice element required. And I see that I'm out of time. Well, we've got to I'm out of, right. I want to save you some time. I want to save some time for rebuttal. Well, here's this with you, though. You said that nobody ever raised in the district court that these were official capacity claims. So what I'm hearing from the opposition to the, I mean, the motion, there's some rejection that says, and I read it, document 127, the defendants have been sued only in their official capacities. That's what the defendant said. And then the plaintiff came back and that's what the district court decides to respond to the proposition that the plaintiff has been sued. They've been sued only in their official capacities. So I think it's not heard anything from the Well, but in the summary judgment motion, we did actually dispute that it was it was raised both individually and in official capacity and individually. And besides, the summary judgment came after the motion to dismiss had already been handed down. I am Mr. Baker. May it please the court. Good morning. If you're going to accuse a district court of committing reversible error, I would suggest that your case authority from this circuit and every other one that I'm aware of requires you to at least raise that issue at the district court level to give that court a chance to examine the issue. Here, what they're accusing the district court of is committing individual versus official capacity. That issue was not addressed by the plaintiff at the district court level at any time. She had Mrs. Randall, Ms. Randall has mentioned in her argument that this was somehow raised by the court sua sponte, that it's an official capacity claim. That is not what happened. What happened is, as Judge, you just noted, we had asserted in our summary judgment motions that only official capacity claims had been presented. The court then, in the initial order granting, or at least talking about summary judgment, noted that official capacity claims were the only ones that had been presented and then it directed additional briefing on that. At no time while the case was before the district court did plaintiff ever suggest that anything other than official capacity claims had been presented. In fact, the plaintiff noted in their initial opposition to the summary judgment that the case presented official capacity claims. And that's going to be at their briefing at your appendix 438 and 443. The motion to dismiss did not in any way shape, manner, or form address the capacity in which the claims were being presented. The only time, the first time, the only time that the capacity was addressed was in summary judgment. Respectfully, I think she's got that mixed up. So why were some claims dismissed on a motion to dismiss? We filed motions to dismiss with regard to the claims that were presented against the supervisors and my client, the sheriff and the county commissioners, alleging that there was no allegation of fact to support a claim that there was an unconstitutional policy or unconstitutional custom presented as to those defendants. That motion was filed back in 14, if I recall the record accurately, and I think I do. And then the summary judgment pleadings were not submitted until the fall and winter initially of last year, 16. And when the court ruled the motion to dismiss, the court did two things on the motion to dismiss. Not only did the court initially said, you're right, the defense has a chance to amend again, to add additional facts. Despite having a road map and being given this order from the court that outlined what the deficiencies were, the then second amended complaint is mislabeled as the first amended complaint in your record. But that amended complaint still contained insufficient facts. Now, if I heard Ms. Randles talking a moment ago, she said, refer to I think you can clarify, Judge. It's called the first amended cause of action. That's actually the second amended petition. What happened is the original It is. It was originally filed in state court as a petition before service obtained, there was an amendment filed, which is also in your record, and that would have been the first amendment, which was filed in state court. Then we removed it, filed the motion to dismiss. That motion was sustained. The plaintiff had asked leave to amend the now complaint additionally. So this document, the first amended petition is actually the second amended complaint because two were already filed, the original and the amendment in state court. She referred us, I'm sorry, I thought you started to say something. She referred us then to several paragraphs including 43, 45, 47, 49 and 50. I've reviewed those. I see nothing in those allegations or anything else in this petition which refers to individual capacity claims. Over 30 years ago, this court told us, the practitioners, how to address this issue. And we're simply to include some place either in the caption of the complaint or in a pleaded allegation that the individuals are being sued both in their individual and official capacities. We don't have that here. And if you're going to convict or charge a district court with reversible error, this is not the case to do that in. For the simple reason that issue was not addressed at the district court and in opposing the summary judgment the plaintiff conceded that only official capacity claims were addressed. Now I also want to then address with the time, this is my time and not yours. I also want to address very briefly the other issue that Ms. Randles wants this case to be about and that is whether there is sufficient evidence in the record to support the lower court's determination that summary judgment was granted. As I understand the arguments and the issues that have been addressed this case is not about an unconstitutional policy. An unconstitutional policy is one that directs unconstitutional behavior. Here we don't have that. We have what she is alleging, at least with regard to the regional jail, is a constitutional policy that was not followed. But I'll let Mr. Leitner address that. With regard to my clients I do not understand there to be any argument that the results that she claims happened to her client were the result of an unconstitutional policy. Clinton County, sir. The county and the jail. Yeah, we have two jails. She does allege that. That's correct. The record I think is before the court and was before the district court is that Sheriff Porter Henson submitted a declaration and he talked about the written policies of the jail including the prohibition against the use of excessive force and the prohibition against medical care not being provided and the types of things that she is addressing. Yeah, but what's the evidence on whether despite the case you're evaluating policy there were these practices? Yeah, what you're talking about then is either you have an unconstitutional custom or you have a deliberately indifferent failure to train. Both of which require that there be notice to the final policy maker of the county of that kind of a problem. In this case it's undisputed that that final policy maker is Sheriff, the former Sheriff Porter Henson. And his declaration establishes I don't think it's really without any significant rebuttal that we had these policies that when there were allegations of excessive force he investigated then with regard to the illegal entry into the mother's residence his affidavit if I recall the record correctly states that he had no information previously that that kind of conduct had occurred. His declaration is what we based our summary judgment motion on with regard to showing that there was no unconstitutional policy a custom and finally with regard to the deliberate indifference issue the record is clear that all of my deputies, all of my deputies were post certified they'd gone through the police academy and they had received on the job training to acquaint them with how they were to function in their assignments. In this case in the, or this court pardon me, in the Tucker versus Evans case talks about several cases in this circuit have held that attendance at a training academy and on the job training is sufficient for proper training. There's no dispute about that. The record in this case the other thing that the plaintiff tries to do is talk about these affidavits and I think the district court pretty aptly summarized what those affidavits don't support those affidavits don't support the broad wide ranging type of pattern of abuse that the plaintiff is trying to attribute. When you review the record there are two things to me on these issues that are before you that become immediately apparent. First, there was no allegation in this lawsuit about individual capacity claims that has been raised solely for the very first time on this appeal. Second, the affidavit of Sheriff Henson which is primarily what I'm relying on and did rely on at the district court level provides the necessary support to show that there was not an unconstitutional policy, custom, or deliberately indifferent failure to train. That's all I have. If you have any questions I'm happy to address them. Thank you. I have the Davies-DeKalb Jail, the second location where Mr. Mick was taken. I don't want to belabor issues but I want to point out in the appendix the two places in our summary judgment briefing where the appellant again went with official immunity and waived any claim to the contrary. It's 508 and 514 of the appendix and that's what the trial court relied on in saying plaintiff, I want some supplemental briefing but let me tell you the issue has been flagged. The summary judgment is based on the fact that your allegations are only official immunity. Now is your chance to say something or do something and what he said or did was he said okay I'm going to take that route. He elected his remedy. He went with official capacity. It was never raised to the court. He never said judge, my bad, now I see the dilemma, let me amend my complaint. Never did that. Never raised it. Even after we made it clear, you're on notice, here's what the summary judgment is about. Even after the judge made it clear, hey, second warning, I'm going to give you a supplemental opportunity to do something about this and instead he said okay, I'll go on official immunity, official capacity and that's what was briefed and that was what was presented to the trial court. The trial court was never asked to take any action to allow him to pursue an individual capacity claim. And to bring it up at this point is contrary to the law and it shouldn't be allowed. He certainly was on notice that that's how the claims were being treated and he's trying to raise an issue on appeal that was not raised at the trial court level. With respect to the motion to dismiss, which came much earlier and only was raised with respect to supervisory officials who had no hands-on contact with this appellant, it's important to also remember on that motion that we're in a unique circumstance because by virtue of the way this played out, it demonstrates that there's no way the appellant could have been prejudiced by that dismissal because the record was developed and the official capacity issues were addressed in summary judgment and the record didn't support an official capacity claim and so therefore by the same claims that were dismissed in the motion dismissed were also dealt with on summary judgment in a substantive fashion. He had no evidence to support those claims. With respect to the issue of medical attention, and as you've pointed out, we're really not arguing about whether there was a violation of policy. That's not the question before the court. But even if it were, and we've raised this in the past, the appellant put forth two affidavits by two former prisoners, Mr. Stewart and Mr. Turner, and these affidavits did nothing but make some conclusory opinions that the officers overused mace. And this case has nothing to do with use of mace. The appellant actually admitted in his deposition that he was not at the jail. He was taken to the emergency room and treated. The physician was called the minute he got to the facility. He was taken to the emergency room and treated within 24 hours and voluntarily chose to leave that facility and came back a week later when surgery was ultimately performed. So he elected to take a five-day delay in treatment, whereas the jail got him there within 24 hours. I'm happy to try to address any questions. I don't want to belabor points that you've already heard. I understand that. Thank you. Thank you, Your Honor. This case has a little bit of a tortured history, as you can tell from the argumentation, a tortured procedural history. The real issue here is at the time of the motion to dismiss, it was Mr. Kloppenstein's understanding that the court had already Therefore, two years later, when the summary judgment motion was argued, of course, it was argued as an official capacity case because that's the way that it had been developed through the course of the proceedings. Nonetheless... Thank you. Nonetheless... There are lots of... Two years after the motion to dismiss in which the individuals were dismissed in their individual capacity, he did accede to that and he even filed an amended complaint that took out those individuals because there had already been a finding that those individuals there was not a cause of action against those individuals in their individual capacity. So as a result, the case would have been highly unusual in that circumstance to go back and say, Your Honor, wait a minute, let's go back and revisit the ruling that you issued two years ago. Rather, that is something that we handle on appeal. If we believe that a decision from a motion to dismiss early in a case is inappropriate, we go forward. We go ahead and try to try the case that we have, but then we appeal that issue at a later point in time. And that's exactly what's happened in this manner. Now, I'd like to speak for a moment to the idea of custom liability. It is the existence of a widespread and continuing persistent pattern of unconstitutional behavior. To the extent the pattern becomes very widespread, that in and of itself can raise an inference that there was notice, either actual or that he had made a grievance, I'm sorry, of Mr. Turner, that he had made a grievance to Sheriff Henson and to Sheriff Becerra regarding the unconstitutional violations that he had seen. And he had also gone to and specifically spoken with Sheriff Henson about the unconstitutional violations that were occurring at the DeKalb County Jail. So we have actual notice as well as such a persistent pattern of notice that the sheriff had to be on notice that this was occurring. That is sufficient for constitutional violation pursuant to the Atkinson case. Now, the sheriff's statement that he didn't know, that raises a credibility issue. It doesn't vitiate the proof that has been adduced by the plaintiffs. And so we have a factual issue because our guys are saying I told him, they had notice, there was a pattern that was established before, during, and after. Mr. Turner, I'm sorry, Mr. Thompson is the one who made that affidavit. And he indicated that he was beaten before and during, that his uncle was beaten before and during, and that there were a number of inmates that he had seen beaten before and during. He didn't specify the number of inmates that he'd seen beaten during that time frame. And that he had heard people who would show him then the medical evidence that they had been beaten. So he had several, a dozen or more individuals that he had been concerned about having been beaten. Although we don't have the exact numbers set forth in the affidavit, that is something that we could have done or could do. The part, yes, but I think that's inappropriate. Well, but he did have personal knowledge because he was beaten. He saw people being beaten. He saw the bruises after being beaten. None of that is hearsay. The only part that's hearsay is when his uncle told him that he'd been beaten. So we only have one incident in all of those that would be considered inadmissible hearsay. Thank you very much.